BELL V. ALTHEIMER.

Opinion delivered June 26, 1911.

1. ADMINISTRATION—SETTLEMENT OF WIDOW AS EXECUTRIX—FRAUD.—The settlement in the probate court of a widow as executrix will not be set aside as fraudulent because she failed to charge herself as executrix with property which she was entitled to accept and retain as widow. (Page 536.)

2. SAME—EFFECT OF CONFIRMATION OF SETTLEMENT.—The confirmation of a settlement of an executrix is a judgment, and whatever matter the probate court has passed upon cannot be assigned in the chancery

court as fraudulent, unless upon the statement of some fact or circumstance not considered by the probate court. (Page 536.)

3. SAME—FRAUD—SUFFICIENCY OF COMPLAINT.—A complaint in equity which attacks the settlement of an executrix in the probate court for fraud or mistake is insufficient if it charges such fraud or mistake in vague, indefinite or general terms, without specifying in what the fraud consisted. (Page 537.)

Appeal from Jefferson Chancery Court; *John W. Elliott,* Chancellor; affirmed.

*S. M. Taylor, W. D. Jones, H. K. Toney* and *S. J. Hunt,* for appellant.

1. The complaint having alleged a failure on the part of the executors to charge themselves with the sum of $324.50, the value of personal property received by them, in their first settlement, from the confirmation of which appellant had lost his right of appeal, which failure amounted to legal, if not intentional, fraud, stated a cause of action cognizable in equity. 45 Ark. 518. Equity has jurisdiction to correct errors in the settlements of administrators, executors and guardians when the right of appeal has been lost and the errors complained of have injured the parties interested and were occasioned by fraud, actual or constructive, or when the errors, although occasioned by accident or mistake, were so gross as to raise the presumption of fraud. 40 Ark. 393; 45 Ark. 505; 48 Ark. 544; 50 Ark. 217; 51 Ark. 1; 77 Ark. 351; 42 Ark. 186.

2. It may be that appellant was not entitled to have a receiver appointed, as prayed for, because the complaint fails to allege that either the executors or their bondsmen are insolvent, yet it is held that an administrator or executor may be dispossessed and a receiver appointed, where he has been guilty of serious waste or gross mismanagement of an estate or misappropriation of its funds. 28 Am. Eng. Enc. of L. 1014; 30 Ark. 230. And under the complaint's general prayer for relief the chancery court, having acquired jurisdiction because of fraud or for any other reason, would have jurisdiction for all purposes, and on final hearing could grant whatever relief the proof and its exigencies of the case demanded. 76 Ark. 551 and cases cited.

3. The action is not permaturely brought. While appellant is not entitled to have funds turned over to him until he arrives at the age of twenty-five years, yet, should he remain quiet until that time to commence proceedings for the appropriation of funds, his right of recovery might be precluded on the ground of laches, since "long acquiescence is deemed equivalent to affirmance." 28 Am. & Eng. Enc. of L. 1135. See also *Id.* 1121; 30 Ark. 230.

*White & Alexander,* for appellees.

1.    Under the statute appellee, Matilda Miles, had the right to retain absolutely, as against heirs and creditors, all the household and kitchen furniture, and in addition thereto personal property of her selection to the value of $150. She was therefore not put to an election in order to retain possession of the property complained of, and the executors committed no fraud in failing to charge themselves therewith. Kirby's Dig. § § 72 & 74; 41 Ark. 64; 64 Ark. 1. Moreover, there is no such allegation of fraud or mistake as is necessary to confer jurisdiction because there has been no final settlement, and until there has been a final settlement appellees could not be charged with having failed to charge themselves with certain assets of the estate. 51 Ark. 14.

The executors promptly filed their accounts of receipts and disbursements, the same were published according to law, and duly approved and confirmed by the probate court, yet no exceptions were ever filed by appellant to any of the settlements, nor did he appeal from any order of confirmation. He cannot now excuse his own negligence and come into a chancery court alleging such errors and irregularities as were a fraud upon his rights. Kirby's Dig. § 140; 39 Ark. 158; 45 Ark. 505. General allegations of fraud, accident or mistake state no cause of action. Allegations of this nature must be specific. 51 Ark. 1.

2:    There is no allegation of insolvency of appellees or their bondsmen in the complaint, nor any allegation of facts or circumstances tending to show that the conduct of the executors was such as to hinder the collection of any outstanding assets of the estate. Hence no grounds were shown for the appointment of a receiver.

Since there are still rents to be collected and other matters to be attended to by the executors before there can be an administration in accordance with the terms of the will, the chancery court would not have jurisdiction, until this is done, to proceed with the administration of the estate without referring it back to the probate court. 84 Ark. 92.

3. The action was prematurely brought. No cause of action would arise until after the last settlement. The statute of limitations in an action to surcharge and falsify a settlement of an administrator for fraud does not begin to run until a presumption of the extinguishment of the trust or open denial or repudiation of the trust is brought home to the knowledge of the parties in interest. 46 Ark. 25; 58 Ark. 84.

KIRBY, J. This suit was brought by plaintiff to surcharge and falsify the accounts and settlements of the executors. The complaint is long, voluminous, indefinite and uncertain. It alleges that John Miles died in Jefferson County on November 6, 1903, and on June 16 before executed his last will, a copy of which was set out. By its terms, after directing the payment of the testator's debts, he gave to his grandson, Johnnie Bell, and the heirs of his body certain lands, describing them, "his home place in Lincoln County, known as the 'John Williams plantation,' and five hundred dollars, also the west half ($\frac{1}{2}$) of lot one (1), block nineteen (19), Tannehill & Owen's Addition to the city of Pine Bluff." To his wife, Matilda Miles, all of his stock and interest in the American Building & Loan Association under certificate No. 65 and five hundred dollars in money, and the east half ($\frac{1}{2}$) of lot one (1), block nineteen (19), Tannehill & Owen's Addition to the city of Pine Bluff, Ark., "and all of my household furniture and any and all of my personal property owned by me now or that I may hereafter acquire not mentioned herein that I may die seized and possessed of. I also give and bequeath to Matilda Miles one-fourth interest in the rent from my home place in Lincoln County, Arkansas, during her life, and that the said Johnnie Bell shall not sell his home place during the life of Matilda Miles." Then follows the bequest of a feather bed and one hundred dollars to Howard McCay, and next he devised to his sister his plantation in the State of Mississippi known as the Aaron Miles place. The will concludes:

"I direct that the property bequeathed herein to said Jonnie Bell shall not be turned over to him until he becomes twenty-five years of age, and, should I die before he arrives at the age of twenty-five years, then I direct that the property conveyed by the terms of this will to the said Johnnie Bell be rented out to the best advantage, and the rents arising therefrom, or so much thereof as will be necessary, to be used and applied to the education, support and maintenance of the said Johnnie Bell. Should I die before the said Johnnie Bell arrives at the age of twenty-five years, and should the said George W. Bell survive me, then and in that event the rents and profits arising from said property, nor no part of the same, shall be applied to the education, support and maintenance of the said Johnnie Bell, but shall remain in the possession of the executors hereinafter named. It is my desire that the property and its rents be turned over to the said Johnnie Bell at the time he arrives at the age of twenty-five years, except I direct my executors shall pay to him one hundred dollars annually from the date of my death until he arrives at the age of twenty-five years. I direct that the executors herein shall, so far as it is in their power, forbid the said George W. Bell from having possession, control or in any way exercising any control or management of the property conveyed to the said Johnnie Bell by this will. * * * * * * * * I hereby appoint S. J. Altheimer and Matilda Miles, of the City of Pine Bluff, Arkansas, executors of this, my last will and testament, and that the said executors give the required bond, upon taking possession of the property mentioned in this will."

The complaint further alleged that the said John Miles was the grandfather of the minor, Johnnie Bell, and the owner of the property referred to in the will at the time of his death; that the will was duly probated, and S. J. Altheimer and Matilda Miles duly qualified as executors thereof; that they failed to charge themselves with certain personal property shown by the inventory set out to be household and kitchen furniture, except a buggy, mare and colt, and some books, and valued by the appraisement at $324.50, the mare, colt, buggy and books being appraised at $75, $25, $30 and $20; that they should have first paid the debts against the estate out of the personal property thereof, and then divided the remainder *pro rata* among the

legatees named in said will; that they paid all the legatees in the will except the appellant in full, the executrix, Matilda Miles, receiving the whole amount except one hundred dollars; that said payments were made partially out of the rents received from the plantation and house belonging to appellant; that, in violation of the terms of said will, they had paid to Matilda Miles, one of the executors, one-fourth of the gross rents derived from the plantation in Lincoln County, when she was entitled only to one-fourth of the net proceeds of the rents of said plantation, thereby paying her $332.55 according to settlement more than was due, and not leaving the amount of the rents in their hands for him to which he was entitled under the will. It was alleged further that they had paid out of the rents derived from the house situated upon the half lot in Pine Bluff given to him the taxes and assessments due upon the whole of the lot, the east half of it belonging to and in the possession of Matilda Miles, as well as the portion belonging to him. That, because of these wrongful payments and credits, said executors did not have in their hands to be paid over to him upon his arrival at twenty-five years of age, the following amount, to wit:

First: His *pro rata* of five hundred dollar bequest......$ 294.00

Second: Due from rents of Lincoln County lands, deducting the annuity............................. 741.73

Third: Due from rents of said west half of lot 1 block 19..................................... 226.15

Total amount due plaintiff ...................................$1,261.88

and that "said defendants as executors of said estate, with a view of wronging, cheating and defrauding this plaintiff, have so made their accounts and their settlements with the probate court of the said county that he has been wronged, cheated and defrauded as aforesaid, and, unless relief be granted him by this court, said sum will have been squandered and lost as to him entirely, inasmuch as plaintiff, as to all of said settlements so made and filed, and which have been approved by the probate court of said county, has lost his right of appeal, except probably as to the fourth annual settlement."

"And plaintiff states that executor, Matilda Miles, as will be seen, has been overpaid, and she has received from the estate of deceased, in fraud of the rights of plaintiff, and not of the rent moneys and amount due him, the sum of ten hundred and eight dollars and one cent ($1008.01), for which sum she should be made and compelled to account to this plaintiff.

"And plaintiff states that with reference to the moneys had and received by defendants as aforesaid which belonged to plaintiff as stated, and which they have negligently and fraudulently failed to account for to his credit in their said several settlements filed in the probate court, and which they have caused to be approved by the probate court of Jefferson County, they should be compelled as executors and individuals by a decree of this court to account for, which in amount is the aggregate sum of twelve hundred and sixty-two dollars and eighty-eight cents ($1,261.88), and that judgment should be entered against them in their fiduciary capacity and individually. That as to all of said settlements, except probably the fourth, plaintiff has lost right of appeal, and by reason thereof he has no adequate remedy at law. And he further states that by reason of the fraudulent and wrong doings of defendants as aforesaid, in violation of the rights of this plaintiff, said executors should be directed by a decree of this court to turn over to a receiver to be appointed by this court all property of every nature and kind belonging to said minor, who shall hold the same and administer it according to the provisions and terms of said will, or until the further orders of this court, and that said defendants as executors be enjoined and restrained from undertaking to have or further control any of the property devised or bequeathed to said minor under said will."

Prayer for judgment for $1,261.88, for the appointment of receiver, and an injunction against the executors from further controlling the property belonging to the plaintiff, and an order directing that they turn over all said property to the receiver, etc.

A demurrer was interposed to this complaint, setting up three grounds:

"First: That the said complaint does not state a cause of action cognizable in a court of equity.

"Second: That the said complaint does not state facts sufficient to constitute any cause of action against the defendants.

"Third: That the said complaint shows on its face that the action, if any exists, is prematurely brought."

The court sustained the demurrer and, the plaintiffs declining to plead further, dismissed the complaint for want of equity, from which judgment plaintiff appealed.

There was no allegation in the complaint that the executors had failed to account for any part of the estate or rents derived therefrom, except said household and kitchen furniture, the mare, colt, buggy and books; neither does the complaint aver that the allowance made and credits given the executors in their settlements were obtained by any misrepresentation or deception practiced upon the court nor that there was any concealment of any of the facts relating thereto, at the time of the allowances were made. The complaint on its face shows that all said personal property not charged and accounted for was such property as the widow was absolutely entitled to, except four items thereof appraised at the value of $150. Under the law she was entitled absolutely to the household and kitchen furniture, without regard to the provisions of the will giving it to her, and also as against creditors and legatees, the estate being solvent, to $150 in value of the personal property of the estate, to be taken at her own selection. Sections 72, 74 Kirby's Digest.

Being entitled to all of said property as the widow, she will be held to have accepted and retained it in such capacity, and not as executor under the will, and was not required to charge herself with it, and no fraud could have been committed in her failure to do so. It is nowhere alleged that any money or other property received by the executors has not been charged against them and accounted for. Under a fair construction of the will, the widow would doubtless be allowed one-fourth of the rents of the Lincoln County plantation without any deductions for taxes and repairs, and she has taken credit for no more than that amount, according to the allegations of the complaint, but in any event all the credits claimed and allowed were duly presented to the probate court, and the settlements approved and confirmed by it, and are judgments of that court which could have

been appealed from if incorrect. *Floyd* v. *Graham,* 97 Ark. 459; *McLeod* v. *Griffis,* 51 Ark. 1; *Jones* v. *Graham,* 36 Ark. 383; *Dyer* v. *Jacoway,* 42 Ark. 186.

In *McLeod* v. *Griffis, supra,* the court said: "It is plain, however, that whatever matter the probate court has passed upon cannot be assigned in the chancery court as fraudulent or as the result of accident or mistake, unless upon the statement of some fact or circumstance not considered by the court. The identical issue decided by the probate court cannot be retried and reversed by the chancery court in this proceeding; and where this is manifest, the court should refuse to take jurisdiction. * * * We are not prepared to say that the chancery court would not have jurisdiction to set aside as a whole the settlements or accounts of an administrator, but it would be only the impeachment of the settlements as a whole." See also *Mock* v. *Pleasants,* 34 Ark. 72; *Scott* v. *Penn,* 68 Ark. 492; *Jones* v. *Graham, supra.*

The complaint herein charged fraud or mistake in such vague, indefinite and general terms, not specifying in what it consisted, that no cause of action cognizable in a court of equity was stated, and the demurrer was properly sustained. *Floyd* v. *Newton,* 97 Ark. 459.

The decree is affirmed.